**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| LESHUNTA FINLEY-SANDERS, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. §2255 |
| | : | |
| v. | : | CRIMINAL NO. |
| | : | 1:20-CR-263-MLB-JKL |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:21-CV-2979-MLB-JKL |

## FINAL REPORT AND RECOMMENDATION

Movant Leshunta Finley-Sanders has filed the instant *pro se* motion to vacate pursuant to 28 U.S.C. §2255, in which she seeks to challenge the constitutionality of her convictions and sentences following her guilty plea in the Northern District of Georgia. (Doc. 51).

## I.    FACTUAL AND PROCEDURAL HISTORY

### A.    Facts Outlined in the Pretrial Sentencing Report (Doc. 23 ("PSR"))

Movant was employed as a bookkeeper from January 2004 to February 2016 for Claxton Printing & Imaging Company ("CP"), owned by Jim Claxton ("Claxton"). (PSR ¶12). Movant's responsibilities as bookkeeper included paying CP's bills, cutting checks drawn on CP's checking account, entering invoices and payroll, and keeping CP's corporate books, but she did not have signature authority on CP's checking account and was not authorized to sign the name of anyone who did have any such authority. (*Id.*). Nevertheless, Movant forged signatures on CP's

checking account and fraudulently used CP's debit cards, ATM cards, and checks, and diverted the funds to pay her personal debts and expenses. (PSR ¶12). All told, over the course of her employment Movant diverted approximately $1.2 million from CP for her own personal use.

In early 2016, after Claxton questioned Movant about unauthorized financial transactions, Movant stopped coming to work. (*Id.* ¶16). She was officially terminated in February of 2016. (*Id.*).

## B. __Procedural History__

On October 12, 2018, Claxton applied for a criminal warrant against Movant in the Fulton County Magistrate Court. (PSR ¶14).[1] On July 23, 2020, the Government filed a criminal information in this Court charging Movant with bank fraud in violation of 18 U.S.C. §1344. (Doc. 1).[2] The information alleged that from January 2004 through February 2016, Movant was employed as a bookkeeper for a small printing company, from which she embezzled more than $1 million and used the money to pay her personal debts and expenses. (*Id.* ¶¶2(a), 3). The sole count

---

[1] Movant's state criminal proceedings were dismissed on April 30, 2021. *See* Fulton County Superior Court Docket Query, *available at* https://publicrecordsaccess.fultoncountyga.gov/app/RegisterOfActions/#/46ED527 81F33B0075C9691AA7C5AB9B8C84473D223BE9840398A77CCDE81C13A4F 3AD38B9D4DACA7BBF25574BF4E75EA/auth/portalembed.

[2] The Government states that the information was filed on August 12, 2020 [Doc. 55 at 1], but that date is when Movant entered her plea [Doc. 8].

in the information referenced one CP check in the amount of $6068.23, which Movant made payable to herself and deposited in her personal bank account on or about June 15, 2015. (Doc. 1 ¶5).

1.     The Plea Agreement

Represented by Margaret Strickler, Movant entered into a negotiated a guilty plea on August 12, 2020, to the single count in the information. (Docs. 8, 8-1). As part of the agreement, the Government agreed that it would:  not bring any further charges against Movant relating to the charge to which she was entering a guilty plea; recommend that Movant receive a three-level adjustment for acceptance of responsibility; and recommend that Movant be sentenced at the low end of the adjusted guideline range, as determined by the Court at sentencing. (Doc. 8-1). Movant agreed to:  pay $1,100,000 in restitution to CP; fully cooperate with the Government concerning the identification of funds and, if she did so to the Government's satisfaction, the Government would not use against her anything she provided through that cooperation in another prosecution; and forfeit to the United States all proceeds obtained directly or indirectly from the offense. (Doc. 8-1).  The plea agreement also contained a waiver of Movant's appellate and collateral rights, *id.* at ¶28, and did not place any lower limits on the sentence Movant could request.

The parties agreed that the following Sentencing Guidelines applied to Movant:  (1) U.S.S.G. §2B1.1(a)(1), which provides for a base offense level of 7 for

3

fraud convictions with statutory maximums greater than twenty years; (2) U.S.S.G. §2B1.1(b)(1)(H), which increases the base offense level by fourteen for a loss of more than $550,000 but less than $1,500,000; (3) U.S.S.G. §3B1.3, which provides for a two-level upward adjustment for abusing a position of trust; and (4) U.S.S.G. §3E1.1, which allows a three-level reduction for acceptance of responsibility. (Doc. 8-1 ¶¶12, 13).

The plea agreement also contained a separate page which, by Movant's signature, she affirmed that, *inter alia*: she read the information against her and discussed it with her attorney; she understood the charges; she carefully reviewed every part of the plea agreement with her attorney, and understood and voluntarily agreed to the terms and conditions contained therein; she also discussed the appellate waiver with her attorney; no one threatened or forced her to plead guilty; no promises or inducements were made to her other than those set forth in the plea agreement; and the discussions toward reaching an agreement between her attorney and the Government took place with her permission. (Doc. 8-1 at 14). On that same page Movant also stated that she was fully satisfied with her attorney's representation. (*Id.*). And finally, Ms. Stickler signed a statement indicating that she had carefully reviewed the charges and plea agreement with Movant and to her knowledge Movant was making an informed and voluntary decision to enter into the agreement and plead guilty. (*Id.* at 15).

4

2.    <u>The Plea Hearing</u>

During the plea colloquy, Movant stated under oath that her attorney gave her the plea agreement and indictment, which Movant had read and understood on her own but she also reviewed the documents with her attorney.  (Doc. 33 ("Plea Tr." at 8).  Movant swore that she understood: the constitutional rights she was waiving by pleading guilty; the consequences of the guilty plea; the charges to which she was pleading guilty; that the maximum penalty was thirty years and that she was required to pay the full amount of restitution; that even though she was entering a plea the Court still could sentence her to the same sentence as if she had gone to trial; the sentence was entirely up the Court, not her attorney, and not the Government; that if she received a harsher sentence that she thought was fair or appropriate she would not be able to withdraw the plea; that any guideline calculation she may have discussed with her attorney or the Government, as well as anything else contained in the plea agreement, was not binding on the Court; and even if the Government may not bring additional charges based on some other conduct the Court still could consider that information in deciding her sentence.  (*Id.* at 10-14).  Movant also stated under oath that she agreed with the Government's description of the elements of the offense; she discussed with her attorney the sentencing guidelines and how they might apply to her case; no one made her any promises or representations other than those contained in the plea agreement, nor did anyone threaten or intimidate her

into entering her plea; she was entering her plea voluntarily and of her own free will and because she was, in fact, guilty; and no one promised her what her actual sentence would be.  (Plea Tr. at 7-15, 19-25, 34-36).

Before the Assistant United States Attorney ("AUSA") summarized the facts the Government would present at trial, the District Judge instructed Movant to listen closely because he would ask her if she agreed or disagreed with those facts and if she wanted to say something else about them.  (*Id.* at 16).  The AUSA summarized the facts of the case:

> First, that at all times material to the case, the defendant was employed as the bookkeeper at Claxton Printing & Imaging Company, a commercial printing company in Conyers, Georgia.
>
> Next, that as Claxton's bookkeeper, the defendant was responsible for paying all of Claxton's bills, cutting checks that were drawn on Claxton's checking account, entering invoices and payroll and keeping Claxton's corporate books.
>
> Next, that the defendant did not have signature authority on Claxton's checking account and was never authorized to sign the name of anyone who did have signature authority on that account.
>
> Next, that the defendant was not permitted to use Claxton's credit cards, debit cards, ATM cards or checks for personal purposes.
>
> Next, that – or in furtherance of the scheme and artifice to defraud and to achieve the object and purpose thereof, the defendant used Claxton's debit cards, ATM cards and checks to pay her personal debts and expenses and to funnel cash to herself and to her husband's company, called Vizsion, that's V-I-Z-S-I-O-N, LLC, in the total amount of at least $1.2 million.

Next, that Defendant Finley-Sanders forged the signature of someone who had signature authority on Claxton's checking account, negotiated fraudulent checks and converted the money to her own use.

And then to execute that fraudulent scheme, on or about June 12th, 2015, for the purpose of executing and attempting to execute the scheme and to obtain money and funds owned by and under the custody and control of Wells Fargo Bank National Association, Defendant Finley-Sanders deposited to her personal bank account at Bank of America, that is an account that ended in 0998, a check in the amount of $6,068.12, which was made payable to Leshunta Finley, and which was drawn on Claxton's checking account at Wells Fargo, which is account number ending in 9289, knowing and having reason to know that the signature on the check was forged.

And finally, that Wells Fargo was insured by the FDIC at all times material to the case.

(Plea Tr. at 16).  After the AUSA's synopsis, the Court asked Movant if she had any disagreement with the facts laid out by the Government's attorney, to which Movant responded, "I have no disagreement, Your Honor." (*Id.* at 18).  The Court asked one more time if Movant had any disagreement with the facts as summarized by the AUSA, to which she responded, "No, I do not, Your Honor." (*Id.*).  Movant then admitted that she used CP's debit and ATM cards and checks to pay personal expenses and forward money to her husband's company. (*Id.*).

Next, the District Judge instructed Movant that the AUSA was going to show her the plea agreement page by page to make sure that she read it "in whatever detail" she wanted, so that she could confirm that she was aware of everything contained in the agreement. (Plea Tr. at 25-26).  The AUSA then went through that process,

7

during which Movant asked a few questions about the appellate waiver, the Court provided thorough responses thereto, and Movant indicated that she understood and that she did not need more time to speak with Ms. Strickler. (*Id.* at 26-34).

Importantly, during that exchange Movant told the Court that "[Ms. Strickler] went over a range with me, and I understand that you're not obligated to that range, so she was just giving me an idea." (*Id.* at 29). Movant then stated that she wanted to understand what an upward variance meant "because you're not obligated to go by the guidelines, the numbers that we went by just from the plea." (*Id.* at 29). After Movant reviewed every page of the plea agreement she and Ms. Strickler confirmed their signatures. (*Id.*).

The Court then discussed with Movant the fact that the Government had agreed to recommend a low-end-of-the-guideline sentence and reiterated that any such agreement was not binding on the Court, and Movant responded, "I understand they're only recommendations." (*Id.* at 34). And finally, Movant stated that she had had enough time to discuss the plea with her attorney and was satisfied with the assistance Ms. Strickler had provided. (*Id.* at 35).

The Court found that: Movant was fully competent and capable of entering an informed plea; she was aware of the nature of the charges against her and the consequences of pleading guilty; the plea also was supported by an independent basis in fact, containing each element of the offense, since Movant admitted to using

her former employer's debit and ATM cards and checks for her own personal reasons; and there were no promises of any kind made to Movant other than as incorporated in the plea agreement. (Plea Tr. at 36). Based on those findings, the Court accepted Movant's guilty plea. (*Id.*).

3.   The PSR

The PSR used the 2018 Guidelines Manual to determine Movant's offense level, which provided that the guideline for bank fraud under 18 U.S.C. §1344 is U.S.S.G. §2B1.1(a)(1). (PSR ¶25). Like the plea agreement, the PSR recommended a base offense level of 7 pursuant to U.S.S.G. §2B1.1(a)(1) based on the statutory maximum of thirty years, plus a fourteen-level upward adjustment for the amount of loss pursuant to U.S.S.G. §2B1.1(b)(1)(H),[3] and a two-level upward adjustment under U.S.S.G. §3B1.2. (*Id.* ¶¶26-29). The adjusted combined offense level was 23, which, when reduced by three levels for Movant's acceptance of responsibility, amounted to a total offense level of 20. (*Id.* ¶¶31-33).

Movant's criminal history category score was 1, based on her prior conviction for forgery in the first degree in the DeKalb County Superior Court. (*Id.* ¶¶37-38). Two points were added to Movant's criminal history pursuant to U.S.S.G. §4A1.2(d) because she committed the offense while she was still on probation under that prior

---

[3]      The PSR calculated the loss amount as $1,119,050.86, which was $19,000 more than the amount to which the parties agreed. (PSR ¶¶21, 27).

9

conviction, for a criminal history total of 3.  (PSR ¶39).[4]  As a result, Movant's custody guideline range was 37-46 months.  *See* (PSR at 21); U.S.S.G. Ch. 5, Pt. A, Sentencing Table.  Ms. Strickler submitted some objections and clarifications to information in the PSR, which are noted therein.  (PSR at 24-26 & ¶¶14, 17, 19, 20, 43, 53).  The Government did not file any objections.

4.   Movant's Sentencing Memorandum

Ms. Strickler also filed a thirty-two page sentencing memorandum on Movant's behalf.  (Doc. 12).  In the memorandum, Ms. Strickler provided a detailed analysis of mitigating factors she asked the Court to consider when sentencing Movant, including Movant's difficult childhood, a miscarriage she suffered, her strong family ties, excerpts from character witness letters as to Movant's giving and loving personality, Movant's willingness to accept responsibility, and the fact that Movant is the sole caregiver for her three-year old son.  (*Id.* at 6-15).  Ms. Strickler then asked the Court to consider all of these factors and grant a downward variance

---

[4]   In her reply Movant merely states that she was not on probation for her prior conviction when she committed the current offense.  (Doc. 58 at 2).  According to DeKalb County Court records, however, Movant entered her guilty plea and was sentenced to five years of probation on February 27, 2003.  *See* DeKalb County Docket Search, *available at* https: //ody.dekalbcountyga.gov /portal / Home /WorkspaceMode?p=0#DispositionEvents.  The PSR is correct that there is no indication that her term of probation was modified in any way, and Movant provides no evidence to show otherwise.  *Id.*; *see also* PSR ¶37, 39.  Consequently, Movant would have been on probation until 2008, four years after she began embezzling from CP.

– for a sentence of up to twelve months to be followed by home confinement or probation and a period of supervised release.  (*Id.* at 30).

    5.   <u>Sentencing</u>

At the sentencing hearing, Ms. Strickler argued that this case was unique and reminded the Court of all of the mitigating factors that she had discussed in the sentencing memorandum, and called Movant's daughter, stepsister, and mother as character witnesses.  (Doc. 34 ("Sentencing Tr.") at 21-32).  Ms. Strickler also told the Court that Movant was molested as a child, was in therapy, and was taking medications for depression.  (*Id.* at 35-41).  She asked the Court to depart downward from the guidelines and sentence Movant to twelve months and a day.  (*Id.* at 41).  Claxton and his son testified for the Government about the magnitude of the loss they suffered as a result of Movant's embezzlement – not just monetarily, but that they felt Movant had destroyed Claxton's legacy, that is, the print shop that had been in his family since his grandfather opened it in 1949.  (*Id.* at 10-18, 41-44).

As agreed upon by the parties, the Government asked for a 37-month sentence, which was at the lowest end of the guideline range.  (*Id.* at 21).  The Government argued that any such sentence was necessary under the §3553 factors to reflect the seriousness of the offense, to promote respect for the law, and to deter others from committing similar offenses.  (*Id.*).

Ultimately the District Judge agreed with the Government and sentenced Movant to that lowest guideline sentence of 37 months to be followed by a period of supervised release. (Sentencing Tr. at 45). Before doing so, the Court noted that Movant's remorse and the testimony of the character witnesses weighed in her favor; however, the Court found just as important that the devastation her fraud caused was significant because it occurred over a ten year period, the amount of money was enormous, Movant was a person that Claxton completely trusted, and Movant had a prior conviction for committing a similar crime. (*Id.* at 48). As a result, the District Judge felt that a downward variance would not be consistent with all of the §3553(a) factors, and thus a guideline sentence – albeit at the lowest end of the range – was, in fact, appropriate. (*Id.*). The Court also ordered Movant to pay $1,119,050.86 in restitution to CP. (*Id.* at 48; Doc. 16).

Ms. Strickler filed a notice of appeal on Movant's behalf on January 19, 2021. (Docs. 17, 20). She then withdrew so that Movant could proceed with an appeal raising claims for ineffective assistance of counsel. (Doc. 18). New counsel was appointed for Movant [Docs. 26, 28], but Movant voluntarily dismissed her appeal [Doc. 36] because, according to Movant, she was told she could only raise ineffective assistance of counsel claims in a §2255 motion. (Doc. 51 at 4, 6, 7).

6.    The §2255 Motion

Movant executed the instant *pro se* §2255 motion on July 23, 2021, and seeks to vacate, or alternatively reduce, her sentence and the restitution amount.  (Doc. 51).  Movant raises five claims of ineffective assistance of counsel, in that Ms. Strickler:

(1)    did not properly advise Movant of the pros and cons of going to trial as opposed to accepting a plea;

(2)    gave Movant improper advice concerning the strength of the Government's case;

(3)    failed to object to the PSR;

(4)    failed to raise the pandemic and Movant's health concerns as a reason for a downward departure; and

(5)    did not argue for home confinement since Movant is the sole provider for her four-year-old son.

(Doc. 51-1).[5] For the following reasons, I **RECOMMEND** that the §2255 motion be **DENIED**.

---

[5]    Movant's §2255 form contains a list of claims; however, her memorandum in support sets forth five claims containing supporting arguments. (Docs. 51, 51-1). Because Movant has provided no factual support for the conclusory claims listed on the §2255 form, they are not cognizable under §2255, and I only will review the five claims she discusses in the memorandum.  *See, e.g., United States v. Jones*, 614 F.2d 80, 82  (5th Cir. 1980) (finding conclusory statement of claim with no specific facts in support fails to state a constitutional claim); *accord Ramsey v. United States*, No. 1:04-CR-0091-JTC-AJB-2, 2010 WL 11512338, at *2 (N.D. Ga. Dec. 8, 2010) ("Mere conclusory statements unsupported by specifics or contentions do not raise a constitutional issue in a habeas case."); *see also Scott v. United States*, 325 F. App'x 822, 825 (11th Cir. 2009) (finding movant failed to demonstrate ineffective

13

## II.   APPLICABLE LAW

**A.**   <u>**Standard of Review**</u>

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255.  Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume that he stands fairly and finally convicted[.] . . ."  *United States v. Frady*, 456 U.S. 152, 164 (1982).  The burden is on the movant to establish her right to collateral relief.  *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015).  A constitutional claim of ineffective assistance of counsel, which generally cannot be fully litigated on direct appeal, is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts.  *Massaro v. United States*, 538 U.S. 500, 505-09 (2003).

The Court should order an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."

---

assistance of counsel where he provided no support, *i.e.,* "reasonably specific, non-conclusory facts" to indicate counsel gave him constitutionally ineffective advice) (citations omitted); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient" to warrant habeas relief.).

14

28 U.S.C. §2255(b); *see also Rosin v. United States*, 786 F.3d 873, 877 (2015).  As discussed below, Movant's §2255 motion and the record in this case conclusively show that she is not entitled to relief in connection with her claims. Thus, no evidentiary hearing is required.

**B.    Ineffective Assistance of Counsel Standard**

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010).  "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense."  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688).  To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).  The Court may resolve an ineffective assistant claim based on either prong.  *Pooler v. Sec'y, Fla. Dep't of Corr.*, 702 F.3d 1252, 1269 (11th Cir. 2012); *see also Strickland*, 466 U.S. at  697 ("[T]here is no reason for a

15

court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

To demonstrate counsel's ineffective assistance after entering a plea, the Movant must show that her "counsel's constitutionally ineffective performance affected the outcome of the plea process[,]" *id.* at 59, by "demonstrating a 'reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial.'" *Lee v. United States*, __ U.S. __, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).  In doing so, the movant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *accord Gutierrez v. United States*, 560 F. App'x 924, 927 (11th Cir. 2014).  "[A movant's] bare allegation that [s]he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*." *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted).

## III.   ANALYSIS

Movant raises five ineffective assistance of counsel claims as set forth in Section I.B.6.  Movant does not appear to argue that her plea was not entered into knowingly or voluntarily; however, even if I construe her allegations as raising such a claim, it simply fails.

**A.** **The Record Demonstrates the Voluntary and Knowing Nature of Movant's Plea.**

In Movant's first two ineffective assistance claims Movant states that Ms. Strickler failed to discuss with her the pros and cons of going to trial versus taking a plea, and that Ms. Strickler provided Movant with improper advice regarding the strength of the Government's case.  As part of these claims, Movant states that she "was made to believe" that the Government would not object to her request for a downward departure at sentencing.[6]  (Doc. 51-1 at 9-10).  Movant also contends that Ms. Strickler never explained to her the recommended guidelines range, and that Ms. Strickler "grossly mischaracterized the likely outcome" by incorrectly advising Movant that her previous criminal conviction occurred so long ago that it would not affect the outcome of her sentencing.  (*Id.* at 11).  All of Movant's arguments are belied by the record.

"[A] §2255 movant who entered a valid guilty plea waives any pre-plea ineffective assistance claims that do not concern [her] decision to enter the plea." *Baird v. United States*, 445 F. App'x 252, 254 (11th Cir. 2011); *accord Wilson v.*

---

[6]   The Government did, in fact, recommend the agreed-upon 37 months of imprisonment at sentencing.  (Sentencing Tr. at 21).  But when the Court asked the AUSA to discuss Movant's request for a six-month sentence, he argued that any such sentence would not be compliant with the §3553(a) factors.  (*Id.* at 39-40).  While the plea agreement does not place any lower limits on what sentence Movant can request, there is no language in the agreement that the Government would not object to any request by Movant for a downward departure.

*United States*, 962 F.2d 996, 997 (11th Cir. 1992). A plea is knowing and voluntary if the Court complies with Fed. R. Crim. P. 11 and ensures that the plea is voluntary and free from coercion, the defendant understands the nature of the charges, and the defendant knows and understands the consequences of her plea. *United States v. Bell*, 776 F.2d 965, 968 (11th Cir. 1985).

In evaluating whether the plea is knowing and voluntary, the representations of the defendant at the plea hearing, as well as the findings by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" because "there is a strong presumption that statements made during the plea colloquy are true." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Belli v. United States*, 859 F. App'x 539, 541 (11th Cir. 2021) ("Belli acknowledged during his plea colloquy that he had read and understood his plea agreement, and we presume that those statements are true."); *Baker v. United States*, 847 F. App'x 761, 765 (11th Cir. 2021) ("There is a strong presumption that the defendant's sworn statements made during a plea colloquy are true.").

Where, as here, any claim by Movant that her plea was involuntary and/or that she received ineffective assistance of counsel is in direct conflict with her statements under oath, she has a heavy burden to show that her statements under oath were false. *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988); *see also Frady*, 456 U.S. at 164, 166

("Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume that he stands fairly and finally convicted."). Movant simply has not met this heavy burden.

Indeed, the Court complied with Fed. R. Crim. P. 11 by ensuring that Movant entered into her plea voluntarily and free of coercion, that she understood the charges and that she knew and understood the consequences of the plea, and Movant's sworn testimony to that effect refutes her current arguments to the contrary. Movant also swore on more than one occasion that she was satisfied with Ms. Strickler's representation, that she carefully had reviewed every part of the plea agreement with her attorney in addition to the sentencing guidelines and how they may apply, that she had had sufficient time to discuss the case with her attorney, and that she understood the terms and conditions of the plea agreement and voluntarily agreed to them. Movant's current self-serving and contradictory statements are insufficient to meet the heavy burden that would serve to overcome the presumption of the truth of her sworn statements. *See, e.g., United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (noting testimony at a plea allocution "carries a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony").

Moreover, Movant received the sentence for which she bargained. And it was clear from Movant's actions and statements at sentencing that she wanted to enter

into the plea, as she stated that she has been "living with this for almost five years" and that she was "actually relieved" to have entered the plea, and she even thanked the AUSA for "being agreeable with a sentence and helping [her] to be able to put it behind [her]." (Sentencing Tr. at 33). The fact that she now has had a change of heart does not alter the conclusion that her plea was knowing and voluntary. *See United States v. Hamidullah*, 847 F. App'x 659, 666 (11th Cir. 2021) (affirming district court's denial of motion to withdraw plea because movant failed to rebut the strong presumption of statements made under oath during the plea colloquy that he had fully discussed the case with his attorney and was satisfied with her reputation, he entered into the guilty plea voluntarily, he committed the offenses as set out in the plea agreement's factual basis, and he understood the consequences of the guilty plea including a waiver of his trial rights), *cert denied*, No. 21-5601, __ U.S. __, 142 S. Ct. 380 (Oct. 12, 2021); *Carter v. United States*, No. 18-12723-B, 2018 WL 8667010, at *1 (11th Cir. Oct. 12, 2018) (finding that the plea colloquy showed defendant's plea was voluntary, and "Carter's testimony at his change-of-plea hearing belied his claims that his counsel failed to investigate his case, did not inform him of the consequences of his guilty plea, and did not negotiate a sufficiently favorable plea agreement"); *United States v. Bradley*, 905 F.2d 359, 360 (11th Cir. 1990) (holding that "[t]o the extent [the defendant] claimed his guilty plea was based on his attorney's estimate of the sentence . . . the claim did not warrant withdrawal

of the guilty plea where [the defendant] acknowledged to the court that he understood the possible maximum sentence for his crime to be greater than the court ultimately imposed"); *Miller v. Sec'y, Dep't of Corr.*, No. 8:14-cv-1760-T-36AEP, 2017 WL 3316585, at *4 (M.D. Fla. August 2, 2017) (finding plea was voluntary in light of defendant's sworn statements during the plea including that he was satisfied with counsel, that he received the bargained-for sentence, and the record showed he was eager to avail himself of the agreed-upon disposition); *Abul-Aziz v. United States*, No. CRIM A 1:03CR39, 2008 WL 4238943, at *6 (N.D.W. Va. Sept. 12, 2008) ("Simply because the petitioner now says [an oral] agreement existed, does not make it so, particularly in light of the testimony the petitioner gave under oath at his plea hearing."), *aff'd*, 337 F. App'x 375 (4th Cir. 2009).  Consequently, the voluntary nature of Movant's plea waives her first two pre-plea ineffective assistance of counsel claims, and she is not entitled to relief in connection with Grounds One and Two.

**B.**   **Ms. Strickler did not Provide Ineffective Assistance of Counsel.**

   1.   Grounds Three, Four, and Five

In Grounds Three, Four and Five, Movant argues that Ms. Strickler was ineffective for failing to: object to the PSR, including the restitution amount; raise

the pandemic and Movant's health concerns as a reason for downward departure;[7] and argue for home confinement based on the fact that Movant is the sole provider for her family.  Importantly, Ms. Strickler actually raised several objections to the PSR, including to the amount of loss.  (*See, e.g.,* Objections to PSR, Doc. 23 at 24, n.1 ("In general Counsel objects to the estimates of loss and other allegations in Paragraphs 15 through 21 of the PSR as they are statements of the former owner of Claxton Printing, Jim Claxton, and Defense Counsel has not seen actual concrete evidence of documentation to back up most of the assertions within these paragraphs.")).  And to the degree that Movant challenges the restitution amount, any such challenge is not cognizable in a §2255 motion.  *See Mamone v. United States*, 559 F.3d 1209, 1211 (holding challenges to restitution orders are not cognizable under §2255 even if defendants simultaneously assert claims challenging their custody); *Mayol v. United States*, No. 15-20383-CR-UNGARO, 2019 WL 4738680, at *4 (S.D. Fla. Aug. 19, 2019) (finding claim of ineffective assistance of counsel for failing to request either a jury trial or evidentiary hearing on the restitution amount not cognizable under §2255), *report and recommendation adopted*, 2019 WL 4737698 (S.D. Ga. Sept. 27, 2019); *see also Odum v. United States*, No. CR615-008, 2016 WL 7479545, at *3 (S.D. Ga. Nov. 10, 2016) (citing

---

[7]    Movant has not specified what health conditions Ms. Strickler should have argued warranted a downward departure.

*Mamone* for the proposition that a defendant cannot "bootstrap a restitution . . . claim into his §2255 motion"), *report and recommendation adopted*, 2016 WL 7477766 (S.D. Ga. Dec. 29, 2016).

Regardless, the AUSA requested that the Court impose the lesser restitution amount to which Movant and the Government agreed as opposed the higher amount in the PSR, and the District Court rejected that request. (Sentencing Tr. at 7-8). As a result, it was not unreasonable for Movant's counsel not to ask the Court for something that the Court already had rejected. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."); *Mackey v. United States*, No. 20-CV-61610-BLOOM, 2021 WL 3110081, at *9 (S.D. Fla. July 22, 2021) (finding no ineffective assistance for counsel for failing to object to inclusion of previous convictions in calculating petitioner's criminal history category because trial court would have overruled any such objection), *appeal filed*, No. 21-13094 (11th Cir. Aug. 27, 2020).

Additionally, and contrary to Plaintiff's argument, Ms. Strickler also argued as one of the mitigating factors for a downward departure the fact that Movant is sole caregiver to her then three-year-old son, and in connection therewith asked that Movant be placed on home confinement after a short term of imprisonment. (Doc. 12 at 16, 20-23, 30). Moreover, although it is not clear to what vague health issues

Movant refers that she claims Ms. Strickler should have raised, Ms. Strickler did note in her objections to the PSR that Movant's annual mammogram revealed a mass about which her doctors were concerned and wanted her to follow up with an ultrasound, and that Movant was currently attempting to make an appointment to do so.  (PSR ¶53).  Ms. Strickland also indicated that Movant has been taking anti-depressants for childhood trauma and postpartum depression.  (PSR at 16, ¶54). Thus, Ms. Strickler could not have been deficient for failing to raise issues that she did, in fact, raise.

But even if she had decided not to raise these issues in support of her argument for a  downward departure, any such decision would not have been unreasonable, as "'[f]amily . . . responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.'" *United States v. DeVegter*, 439 F.3d 1299, 1307 (11th Cir. 2006) (quoting U.S.S.G. Manual §5H1.6 (2000)).  Put another way, effects of a petitioner's sentence on her family are not extraordinary enough to warrant a downward departure, because "[i]nnocent young family members, including children, commonly suffer as a result of a parent's incarceration."  *See id.* (reversing downward departure based on, *inter alia*, family circumstances, *i.e.,* that defendant's dyslexic son needed tutoring and his mother-in-law was in failing health, because those circumstances "do not distinguish his case from the many cases in which [the Eleventh Circuit] ha[s] reversed downward

departures"); *see also United States v. Mogel*, 956 F.2d 1555, 1565 (11th Cir. 1992) (finding woman having two minor children to support and mother living with her not extraordinary to warrant a downward departure); *United States v. Cacho,* 951 F.2d 308, 311 (11th Cir. 1992) (finding the fact that the petitioner had minor children to take care of was not extraordinary so as to warrant downward departure).  Thus, just as with the restitution issue, counsel could not have been ineffective for failing to raise a meritless argument.  *See Bolender*, 16 F.3d at 1573.

Likewise, Movant has not demonstrated that her vague health issues or the pandemic constitute extraordinary issues to warrant a downward departure, as neither situation was "present to an unusual degree and distinguishe[d] the case from the typical cases covered by the deadlines."[8]  U.S.S.G. §5H1.4; *see also United States v. Piper*, No. 20-1867, 2021 WL 5088709, at *4 (6th Cir. Nov. 2, 2021) (upholding district court's decision not to grant a downward departure where petitioner's health conditions were not extraordinary, even considering COVID-19); *United States v. Hernandez-Alavez*, 836 F. App'x 159, 160 (4th Cir. 2021) (rejecting argument that sentence was unreasonable because the district court should have granted a downward departure based on the COVID-19 pandemic's impact in prisons); *United States v. Rittall*, 688 F. App'x 22, 29 (1st Cir. 2017) (stating that

---

[8]     If Movant's vague allegations of health issues relate to the mass in her breast, Movant does not provide the results of the ultrasound.

departures based on health problems are discouraged, and can only be justified if the medical problems are present in an unusual degree).

2.    Movant Has Failed to Show Prejudice.

Finally, even if Movant had established that counsel was deficient, she cannot show that it would have been rational for her to reject the plea.  First, the evidence against Movant was overwhelming, and Movant does not attempt to, nor could she, show that she had any viable defense to counter that overwhelming evidence at trial. Additionally, at the time Movant entered her plea, the Government had not yet brought the case before the grand jury for indictment and only included in the information one specific check for $6,068.12 – approximately one half of one percent of the $1.2 million Movant stole from CP.

Had Movant not entered the plea, the Government could have brought numerous other charges against Movant, all of which would have exponentially increased her sentence exposure.[9]  Likewise, Movant would not have received a downward departure for her acceptance of responsibility, and the Government may not have recommended, nor the Court entered, a sentence at the lowest end of the

---

[9]    It is not clear how many federal charges the Government could have brought in conjunction with the remaining 99.5 percent of the funds Movant stole from CP. At the very least, Movant likely would have been charged with several counts of aggravated identity theft, each charge for which would have had a mandatory minimum of two years to be served consecutively to any other term of imprisonment. *See* 18 U.S.C. §1028A.

guideline range.[10]  Under these circumstances, I cannot find that a rational person in Movant's situation would have rejected the plea.  *See, e.g., Diveroli v. United States*, 803 F.3d 1258, 1265 (11th Cir. 2015) (finding decision to proceed to trial would not have been rational where there was overwhelming evidence of guilt, the defendant had no valid affirmative defenses, and he faced a much higher potential sentence); *United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (finding the movant could not demonstrate prejudice because a rational person would not have rejected a plea bargain where movant received the "exceptional benefit" of lowering his sentence of imprisonment by eight years).

## IV.   CONCLUSION

Based on the foregoing reasons, **IT IS RECOMMENDED** that Leshunta Finley-Sanders' motion to vacate her sentence [Doc. 51] be **DENIED WITH PREJUDICE**.

## V.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing §2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific

---

[10]     Notably, the District Judge indicated that he found Movant's acceptance of responsibility statement to be "truly heartfelt," "touching," and "very remorseful" [Sentencing Tr. at 5-6, 9-10], which may have contributed to the Court's decision to sentence Movant to the lowest-end of the guideline range.

issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. §2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part."  *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the §2255 motion.  *See id.*  "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."  *See Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325).  In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" my determination that Movant has not demonstrated that her plea was anything other than voluntary and/or that she received ineffective assistance of counsel.  *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**SO ORDERED** this 23rd day of March, 2022.

_____

JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE